JOHN T. JASNOCH (CA 281605)
JOE PETTIGREW (CA 236933)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
jpettigrew@scott-scott.com

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Plaintiff John Yeager*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff John Yeager ("Plaintiff" or "Yeager"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of public statements by Tesla, Inc. ("Tesla" or the "Company"), as well as media and analyst reports about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.   NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired Tesla common stock from August 7, 2018 through August 9, 2018, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Tesla designs, develops, manufactures, and sells high-performance fully electric vehicles and energy generation and storage systems, and also installs and maintains such systems and sells solar electricity.

3. On August 7, 2018, Defendant Elon Musk ("Musk"), the Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board") of Tesla, issued the following post on Twitter.com: "Am considering taking Tesla private at $420. Funding secured."  Later that day, Musk issued another post on Twitter.com: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."

4. But the truth was that Musk had not lined up secure financing for a going-private transaction that priced Tesla shares at $420 per share.  Rather, Musk's tweets were an ill-conceived attempt to manipulate the stock price of Tesla upward in order to burn investors who had sold Tesla stock short.  Musk has a long-standing public feud with short sellers and has

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  threatened them in the recent past.  For example, on May 4, 2018, Musk tweeted that the "short
2  burn of the century [was] comin[g] soon" and that the "sheer magnitude of the short carnage
3  will be unreal. If you're short, I suggest tiptoeing quietly to the exit[.]"

4       5.     Musk's false statements had the desired effect of creating a massive one-day
5  increase in the price of Tesla stock and causing short sellers large losses.  The share price of
6  Tesla common stock closed at $379.57 on August 7, 2018, a jump of 11% over the previous
7  day's closing price.  It has been reported in the media that short sellers lost as much as
8  $1 billion as a result.

9       6.     However, the fraudulent nature of Musk's statements was uncovered over the
10 next two days when neither Tesla nor Musk substantiated Musk's claim that there was secure
11 financing for a going-private transaction at $420 a share.  On August 8, 2018, it was announced
12 that the U.S. Securities and Exchange Commission ("SEC") had made inquiries to Tesla
13 regarding the veracity of the tweet sent by Musk and the reason the disclosure was made via a
14 social media posting rather than a filing with the SEC.  Multiple financial news agencies have
15 reported that no investment banks or technology firms they contacted were aware of Tesla's
16 potential going-private transaction and had denied being the source of the "secure" funding that
17 Musk had promised.

18      7.     This news caused the price of the Company's stock to decline from $379.57 per
19 share, on August 7, 2018, to close at $352.27 per share, on August 9, 2018.

20      8.     As a result of the fraudulent conduct alleged herein, Plaintiff and other members
21 of the Class purchased Tesla common stock at artificially inflated prices and suffered significant
22 losses and damages once the truth emerged.

23 **II.    JURISDICTION AND VENUE**

24      9.     The federal law claims asserted herein arise under and pursuant to §§10(b) and
25 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated
26 thereunder by the SEC (17 C.F.R. §240.10b-5).

27      10.    This Court has jurisdiction over the subject matter of this action pursuant to 28
28 U.S.C. §1331, §27 of the Securities Act (15 U.S.C. §78aa.).  This Court has jurisdiction over

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District pursuant to §27 of the Exchange Act, 28 U.S.C. §1391(b), because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

### III. PARTIES

12. Plaintiff Yeager purchased Tesla common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

13. Defendant Tesla is a Delaware company with principal offices located at 3500 Deer Creek Road, Palo Alto, California 94304. The Company's common stock trades on the NASDAQ under the ticker symbol "TSLA."

14. Defendant Musk has served at all relevant times as the Company's CEO and Chairman of the Board.

15. Defendant Musk:
    (a) directly participated in the management of the Company;
    (b) was directly involved in the day-to-day operations of the Company at the highest levels;
    (c) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein;
    (d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;
    (e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)  approved or ratified these statements in violation of the federal securities laws.

16.  Defendant Musk and Tesla are collectively referred to herein as "Defendants."

17.  Because of Defendant Musk's position within the Company, he had access to undisclosed information about Tesla's business, operations, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's shareholder records, operating plans, budgets and forecasts, and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and director meetings and committees thereof, and via reports and other information provided to them in connection therewith.

18.  As an officer of a publicly held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, Defendant Musk had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded stock would be based upon truthful and accurate information. Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19.  Defendant Musk, because of his position with the Company, possessed the power and authority to control the contents of Tesla's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Because of his position and access to material non-public information available to him, he knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations which were being made were then materially false and/or misleading. Defendant Musk is liable for the false statements

1  pleaded herein, as those statements each were "group-published" information, the result of the
2  collective actions of the Defendants.

3      20.    Defendant Musk is liable as a participant in a fraudulent scheme and course of
4  business that operated as a fraud or deceit on purchasers of Tesla common stock by
5  disseminating materially false and misleading statements and/or concealing material adverse
6  facts. The scheme: (i) deceived the investing public regarding Tesla's business, operations,
7  management, and the intrinsic value of its common stock; and (ii) caused Plaintiff and other
8  shareholders to purchase the Company's common stock at artificially inflated prices.

9  **IV.**     **SUBSTANTIVE ALLEGATIONS**

10     **A.**     **Background**

11     21.    Tesla designs, develops, manufactures, and sells high-performance fully electric
12 vehicles and energy generation and storage systems, and also installs and maintains such
13 systems and sells solar electricity.

14     **B.**     **False and Misleading Statements**

15     22.    On August 7, 2018, Defendant Musk, CEO and Chairman of the Board, issued
16 the following post on Twitter.com: "Am considering taking Tesla private at $420. Funding
17 secured." Later that day, Musk issued another post on Twitter.com: "Investor support is
18 confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."

19     23.    Also, on August 7, 2018, Tesla posted to its website an email purportedly sent
20 from Musk to Tesla employees titled "Taking Tesla Private." The email included the following
21 statements:

22     • "Earlier today, I announced that I'm considering taking Tesla private at a
23        price of $420/share."

24     • "First, I would like to structure this so that all shareholders have a choice.
25        Either they can stay investors in a private Tesla or they can be bought out
26        at $420 per share, which is a 20% premium over the stock price following
27        our Q2 earnings call (which had already increased by 16%). My hope is
28

for all shareholders to remain, but if they prefer to be bought out, then this would enable that to happen at a nice premium."

24. On this news, the share price of Tesla common stock soared, closing at $379.57, on August 7, 2018, a jump of 11% over the previous day's closing price.

25. These statements were false and misleading because the truth was that Musk had not lined up secure financing for a going-private transaction that priced Tesla shares at $420 per share. Rather, Musk's tweets were an ill-conceived attempt to manipulate the stock price of Tesla upward in order to burn investors who had sold Tesla stock short. Musk has a long-standing public feud with short sellers and has threatened them in the recent past. For example, on May 4, 2018, Musk tweeted that the "short burn of the century [was] comin[g] soon" and that the "sheer magnitude of the short carnage will be unreal. If you're short, I suggest tiptoeing quietly to the exit[.]"

26. As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased Tesla common stock at artificially inflated prices and suffered significant losses and damages once the truth emerged.

**C.     The Truth Begins to Emerge**

27. Tesla has made no filing with the SEC confirming any aspect of the purported sales process. On August 8, 2018, it was announced that the SEC has made inquiries to Tesla regarding the veracity of the tweet sent by Musk and the reason the disclosure was made via a social media posting rather than a filing with the SEC.

28. Multiple financial news agencies have reported that no investment banks or technology firms they contacted were aware of Tesla's potential going-private transaction or had lined up or pledged funding for such a transaction.

29. On August 9, 2018, news reports indicated that the Tesla Board planned to meet the following week to formalize the process of exploring Musk's going-private proposal. The reports indicated that the Board would likely ask Musk to recuse himself and told Musk that he would need his own set of advisors.

30. The foregoing events caused the price of the Company's stock to decline from $379.57 per share, on August 7, 2018, to close at $352.27 per share, on August 9, 2018.

## V. ADDITIONAL SCIENTER ALLEGATIONS

31. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

32. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Tesla, their control over, and/or receipt and/or modification of Tesla's allegedly materially misleading statements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Tesla, participated in the fraudulent scheme alleged herein.

## VI. LOSS CAUSATION AND ECONOMIC LOSS

33. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Tesla's misconduct was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Tesla's common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and subsequent significant decline in the value of the Company's

1  common stock price when Defendants' prior misrepresentations and other fraudulent conduct
2  was revealed.

3  34. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Tesla's business, operations, and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Tesla's common stock to be artificially inflated. Plaintiff and other Class members purchased Tesla's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## VII. PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

35. At all relevant times, the market for Tesla common stock was an efficient market for the following reasons, among others:

(a) Tesla's common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient market;

(b) during the Class Period, Tesla's common stock was actively traded, demonstrating a strong presumption of an efficient market;

(c) as a regulated issuer, Tesla files with the SEC public reports;

(d) Tesla regularly communicates with public investors via established market communication mechanisms; and

(e) unexpected material news about Tesla was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

36. As a result of the foregoing, the market for Tesla common stock promptly digested current information regarding Tesla from all publicly available sources and reflected such information in Tesla's stock price. Under these circumstances, all purchasers of Tesla common stock during the Class Period suffered similar injury through their purchase of Tesla common stock at artificially inflated prices, and a presumption of reliance applies.

37. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to the ruling of the U.S. Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Tesla.

## VIII. NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

38. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

39. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

40. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Tesla who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants

expressly related to or stated to be dependent on those historic or present-tense statements when made.

## IX. CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Tesla common stock on the public market during the Class Period, and were damaged (the "Class"), excluding the Company, Defendants, and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tesla common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, Tesla common stock is held by thousands of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

43. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

44. Plaintiff has, and will continue to, fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45. Common questions of law and fact exist, as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the Defendants' respective acts, as alleged herein;

(b) whether the Defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c) whether the price of Tesla common stock during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of §10(b) and Rule 10b-5**
**(Against All Defendants)**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (b) cause Plaintiff and other members of the Class to purchase Tesla common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

49. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Tesla common stock in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons, as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of Tesla as specified herein.

51.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices, and a course of conduct, as alleged herein, in an effort to assure investors of Tesla's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tesla and its business operations and future prospects in the light of the circumstances under which they were made not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Tesla common stock during the Class Period.

52.     Defendant Musk's primary liability, and controlling person liability, arises from the following facts: (a) Defendant Musk was a high-level executive and director at the Company during the Class Period; (b) Defendant Musk, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to, and participated in, the creation, development, and reporting of the Company's financial condition; (c) Defendant Musk enjoyed significant personal contact and familiarity with the other high-level executives and directors at the Company and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (d) Defendant Musk was aware of the

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company's dissemination of information to the investing public that he knew, or recklessly disregarded, was materially false and misleading.

53. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tesla's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Tesla's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Tesla's publicly traded common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock, and/or on the absence of material adverse information that was known to, or recklessly disregarded by, Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tesla common stock during the Class Period at artificially high prices and were or will be damaged thereby.

55. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and other members of the Class and the marketplace known the truth regarding Tesla's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tesla common stock, or, if they had acquired

such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

56. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

58. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of common stock giving rise to the cause of action.

### COUNT II
### Violation of §20(a) of the Exchange Act
### (Against Defendant Musk)

59. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60. Defendant Musk acted as a controlling person of Tesla within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of his high-level position, agency, ownership, and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Defendant Musk had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Defendant Musk was provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

61. In particular, Defendant Musk had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to

1 control or influence the particular transactions giving rise to the securities violations, as alleged herein, and exercised the same.

2 62. As set forth above, Tesla and Defendant Musk each violated §10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

63. By virtue of his position as a controlling person, Defendant Musk is liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

64. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of common stock giving rise to the cause of action.

## X. PRAYER FOR RELIEF

65. WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, certifying Plaintiff as Class Representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

B. Awarding compensatory damages in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Granting extraordinary equitable and/or injunctive relief as permitted by law; and

E. Such other and further relief as the Court may deem just and proper.

## XI. JURY TRIAL DEMANDED

66. Plaintiff hereby demands a jury trial.

Dated: August 13, 2018        SCOTT+SCOTT ATTORNEYS AT LAW LLP

By: /s/ John T. Jasnoch
JOHN T. JASNOCH (CA 281605)
JOE PETTIGREW (CA 236933)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

- 15 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Facsimile: (619) 233-0508
jjasnoch@scott-scott.com
jpettigrew@scott-scott.com

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Plaintiff John Yeager*

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, John Yeager, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1. I have reviewed the Complaint in this matter and authorize Scott+Scott Attorneys at Law LLP to file lead plaintiff papers in this matter.

2. I am willing to serve as a representative party on behalf of the purchasers of Tesla, Inc. securities during the Class Period, including providing testimony at deposition and trial if necessary.

3. During the Class Period, I purchased and/or sold the security that is the subject of the Complaint, as set forth in the attached **Schedule A**.

4. I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5. During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private actions arising under the Securities Act or the Exchange Act.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at _____, on the ___ of August, 2018.
(city, state)

John Yeager

# Schedule A

Ticker: **TSLA**    Cusip: **88160R101**

Class Period: 08/07/2018 to 08/09/2018

**John Yeager**

| | | DATE | SHARES | PRICE |
|---|---|---|---|---|
| | **Purchases:** | 8/7/2018 | 3,000 | $362.99 |
| | | 8/7/2018 | 1,000 | $379.50 |
| | | 8/7/2018 | 1,000 | $379.25 |
| | | 8/7/2018 | 500 | $378.26 |
| | | 8/7/2018 | 300 | $377.48 |
| | | 8/9/2018 | 955 | $349.50 |
| | | 8/9/2018 | 2,445 | $352.34 |
| | **Sales:** | 8/7/2018 | 3,000 | $364.68 |
| | | 8/9/2018 | 85 | $351.97 |
| | | 8/9/2018 | 200 | $351.95 |
| | | 8/9/2018 | 18 | $350.63 |
| | | 8/9/2018 | 2,497 | $351.00 |
| | | 8/9/2018 | 2,500 | $350.00 |
| | | 8/9/2018 | 900 | $352.15 |